**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| **OMKAR HOTELS, INC.,** | : | Case No. 3:21-bk-01418-RCT |
| | : | |
| Debtor. | : | |
| | : | |

**FIRST MODIFICATION BEFORE CONFIRMATION TO**
**SUBCHAPTER V PLAN OF REORGANIZATION OF DEBTOR**
**OMKAR HOTELS, INC. DATED SEPTEMBER 21, 2021**

Omkar Hotels, Inc., Debtor and Debtor-in-Possession in the above-referenced Bankruptcy Case, in accordance with Federal Rule of Bankruptcy Procedure 3019(a), files this First Modification ("**First Modification**") to its *Subchapter V Plan of Reorganization Dated September 21, 2021* (Dkts. 81 and 87) (the "**Plan**") to document a proposed consensual confirmation of the Plan as to The Cadle Company II, Inc. and the U.S. Small Business Administration. Debtor shows that this First Modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder of Debtor in such a manner to cause a creditor which previously voted in favor of the Plan to change its vote. Except as expressly provided otherwise in this First Modification, all provisions of the Plan remain as provided in the Plan. Unless otherwise specifically defined in this First Modification, capitalized terms used in this Modification shall have those meanings assigned to them in the Plan.

1.

The Allowed Secured Claim of The Cadle Company II, Inc. ("**Cadle**") ("**Class 2 Secured Claim**") is, before taking into consideration adequate protection payments made through the Effective Date, **$1,700,000** as of the Effective Date and is secured by a senior security interest in the Property and the Debtor's personal property, but excluding the following: cash, deposit accounts, hotel rents, hotel revenues, and all other cash or cash equivalents representing income or receipts of the Debtor (collectively, "**Hotel Revenues**"). The Class 2 Secured Claim will be satisfied in full as follows: The Reorganized Debtor shall pay the allowed amount of the Class 2 Secured Claim, together with Plan Interest of 3.75% (which interest shall accrue from the Effective Date) for the first 36 months following the Effective Date and at the rate of 4.25% for each month thereafter, amortized over 240 months, in 240 monthly installments of approximately **$10,079.00** for each of the first 36 months and **$10,526.99** for each month thereafter, with such payments commencing on the first day of the month following the month in which the Effective Date occurs, with a like payment on or before the first day of each month

thereafter, such that the Class 2 Secured Claim will be paid in full in 240 payments. Except as modified by the Plan and any order disposing of that certain Adversary Proceeding No. 3:21-bk-01418 (the "**Adversary Proceeding**"), the Holder of the Class 2 Secured Claim shall retain all liens securing the Claim until the Claim is paid in full; provided, further, that Confirmation will void pursuant to § 506(d) all liens in excess of the allowed amount of the Class 2 Secured Claim. The Claim may be pre-paid in whole or part at any time, without penalty. The Deficiency Claim of Cadle, if any, in connection with the Class 2 Secured Claim and Cadle's additional alleged unsecured claim of $104,579.03 (raised in Proof of Claim No. 3) (collectively, the "**Cadle Unsecured Claims**") shall be waived, with such waiver evidenced by Cadle's affirmative vote in favor of the Plan and consent to the entry of the Confirmation Order (which consent Cadle shall evidence through the signature of its counsel on the Confirmation Order). And in all events, Confirmation of the Plan shall constitute the disallowance of each of the Cadle Unsecured Claims without further order of the Court and Cadle shall not participate or receive distributions on account any of the Classes that address the payment of unsecured claims.

2.

The Allowed Secured Claim of the United States Small Business Administration ("**SBA**") on its EIDL Loan ("**Class 5(a) Secured Claim**") has an original alleged principal balance of **$150,000.00** and is secured by a junior security interest in the Hotel Revenues and junior security interest in certain of its personal, but not real, property (with such personal property being more particularly provided in the Class 5(a) Secured Claim loan documents). The Reorganized Debtor shall pay the allowed amount of the Class 5(a) Secured Claim in full in accordance with the terms and conditions of that certain Loan Authorization & Agreement, that certain Note, and that certain Security Agreement (each executed by Debtor on or about August 26, 2020), which provide that such amount is to be repaid in 360 equal monthly installments of **$731.00** beginning on or about August 27, 2021. On the Effective Date, the Reorganized Debtor shall (i) make an initial payment and cure payments for payments due since August 27, 2021 and through the Effective Date (with such initial and cure payments estimated to total **$4,386**) and (ii) thereafter make monthly payments in accordance with the Loan Documents, such that the Class 5(a) Secured Claim is unimpaired. Except as modified by the Plan and any order disposing of the Adversary Proceeding, the Holder of the allowed Class 5(a) Secured Claim shall retain all liens securing the Claim until the Claim is paid in full; provided, further, that Confirmation will void pursuant to § 506(d) all liens in excess of the allowed amount of the Class 5(a) Secured Claim. The Claim may be pre-paid in whole or part at any time, without penalty. The Class 5(a) Secured Claim is fully secured without a Deficiency Claim. And in all events, Confirmation of the Plan shall constitute the disallowance of any Deficiency Claim of the SBA in connection with the Class 5(a) Secured Claim without further order of the Court and the SBA shall not participate or receive distributions on account any of the Classes that address the payment of unsecured claims.

3.

The Allowed Secured Claim of the SBA on its 504 Loan ("**Class 5(b) Secured Claim**")

is **$200,000.00** as of the Effective Date, secured by a junior security interest in the Property, and is not secured by any other assets of the Debtor, including, without limitation, personal property and the Hotel Revenues. The Reorganized Debtor shall pay the allowed amount of the Class 5(b) Secured Claim, together with Plan Interest at 3.75% for the first 60 months following the Effective Date and at the rate of 4.25% thereafter (which shall interest accrue from the Effective Date), amortized over 240 months, in 240 monthly installments of approximately $731.00 for each of the first 60 months following the Effective Date and $925.07 for each month thereafter, with such payments commencing on the first day of the month following the month in which the Effective Date occurs, with a like payment on or before the first day of each month thereafter, such that the allowed Class 2 Secured Claim will be paid in full in 240 payments. Except as modified by the Plan and any order disposing of the Adversary Proceeding, the Holder of the allowed Class 5(b) Secured Claim shall retain all liens, if any, securing the Claim until the Claim is paid in full; provided, further, that Confirmation will void pursuant to § 506(d) all liens in excess of the allowed amount of the Class 5(b) Secured Claim. The Claim may be pre-paid in whole or part at any time, without penalty. The Deficiency Claim of the SBA, if any, in connection with the Class 5(b) Secured Claim shall be waived, except in the case of a foreclosure, with such waiver evidenced by the SBA's affirmative vote in favor of the Plan and consent to the entry of the Confirmation Order (which consent the SBA shall evidence through the signature of its counsel on the Confirmation Order). And in all events, except as noted above, Confirmation of the Plan shall constitute the disallowance of the SBA's Deficiency Claim without further order of the Court and the SBA shall not participate or receive distributions on account any of the Classes that address the payment of unsecured claims.

4.

The Allowed Non-Priority Unsecured Claims in Class 7 (the "**Class 7 Unsecured Claims**"), which excludes any unsecured claims of Cadle or the SBA, including any Deficiency Claims, are estimated to total **$19,880.00** as of the Effective Date and will be paid in full in not less than four (4) equal annual payments, with the first such payment due on or before December 31, 2022. The Class 7 Unsecured Claims may be pre-paid in whole or part at any time, without penalty. Payment of those Claims in full shall be deemed satisfaction of the Reorganized Debtor's obligations to the Holders of Claims in Class 7 under the Plan. Notwithstanding anything else in the Plan to the contrary, any Allowed Unsecured Claim in Class 7 shall be reduced by any payment received by the creditor holding such Claim from any third party or other obligor, and the Reorganized Debtor's obligations hereunder shall be reduced accordingly.

5.

In connection with Confirmation, and within seven (7) business days after the entry of the Confirmation Order, the Debtor, Cadle, and the SBA shall file a motion to compromise under F.R.B.P. 9019, in connection with the Adversary Proceeding, that determines the extent, validity, and priority of liens, mortgages, and security interests as to Cadle and the SBA in a manner that is consistent with the security interests described in paragraphs 2 and 3 of this Modification (without waiver of any right of the Debtor to seek other appropriate relief, including, without

limitation, default declaratory relief, against the remaining Defendants in the Adversary Proceeding).

6.

Article V.C.2 ("Unclaimed Distributions) of the Plan is hereby deleted in its entirety and restated as follows:

> Under the Plan, payment will be stopped on checks disbursed by the Reorganized Debtor to holders of Allowed Claims if such checks remain not cashed ninety (90) days after the date of disbursement. While the Cash represented by such checks shall become property of the Reorganized Debtor pursuant to Section 347(b) of the Bankruptcy Code, the fact that a check is stopped in accordance with this Article V.C.2 shall in no way diminish or eliminate the Reorganized Debtor's liability to the recipient under the Plan.

7.

Article V.C.4 ("Distributions to Last Known Address") of the Plan is hereby deleted in its entirety and restated as follows:

> Distributions to holders of Allowed Claims will be sent to the last known address set forth on such holder's proof of Claim Filed with the Court, or on the Schedules, if no proof of Claim has been filed. Holders of Claims may change the address to which distributions, if any, will be sent by furnishing written notice to Reorganized Debtor, in accordance with Article XV.M hereof. A proper notice of change of address will be effective for a distribution if received at least 30 days in advance of such distribution date. U.S. Postal notifications of changes of address will be honored, provided that Reorganized Debtor shall have no obligation to investigate the address of the holder of an Allowed Claim following expiration of such U.S. Postal notifications.

8.

If the Plan is confirmed under 11 U.S.C. § 1191(a) (i.e., confirmed as a consensual plan as defined by the Bankruptcy Code), then all of the provisions of Subchapter V of the Bankruptcy Code relating to consensual plans under § 1191(a) shall be self-operative.

If the Plan is confirmed under 11 U.S.C. § 1191(b) (i.e., not confirmed as a consensual plan as defined by the Bankruptcy Code), then the Plan shall be implemented as follows, notwithstanding any other provision of the Bankruptcy Code:

    (i)        The Subchapter V Trustee will continue as a Subchapter V trustee, and retain all of the duties, powers, and rights of a Subchapter V trustee, through the satisfaction of all required payments to unsecured creditors in Classes 6 and 7, except that the Reorganized Debtor, rather than the Subchapter V Trustee, shall make all Plan payments (notwithstanding 11 U.S.C. § 1194).

    (ii)       The Reorganized Debtor shall file post-confirmation quarterly operating reports through and including the issuance of the Final Decree.

    (iii)      Upon the completion of all payments to unsecured creditors in Classes 6 and 7, the Reorganized Debtor may move for the entry of a discharge and Final Decree, all as provided in 11 U.S.C. § 1192.

9.

Article XV.F ("Events of Default") is hereby deleted in its entirety and restated as follows:

    Unless otherwise specifically provided in a class under the Plan, in the event of a default by the Reorganized Debtor in payments under the Plan or otherwise to the Holder of an Allowed Claim, the Holder must send written notice ("**Default Notice**") to the Reorganized Debtor at the address for the Reorganized Debtor listed in Article XV.M of the Plan unless the Reorganized Debtor has provided the Holder with a written notice of a change of address. Such Default Notice must state the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that the Reorganized Debtor has ten (10) business days (in the case of a monetary default) and thirty (30) business days (in the case of a non-monetary default) from receipt by the Reorganized Debtor and its counsel of the Default Notice to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). The Holder must send such Default Notice to the Reorganized Debtor via certified mail or recognized overnight carrier with a copy via email or fax and certified mail or recognized overnight carrier to David L. Bury, Jr. and G. Daniel Taylor (Stone & Baxter, LLP) at the address reflected in Article XV.M. In the event that the Plan is confirmed under Section 1191(b) and the Subchapter V Trustee's appointment has not been terminated, the Holder must also provide a copy of the Default Notice to the Subchapter V Trustee at the address reflected in this Plan or on the docket for the Bankruptcy Case. The Reorganized Debtor shall have ten (10) business days or thirty (30) business days (as applicable) from the Reorganized Debtor's and its counsel's receipt of the Default Notice to cure such default. Receipt by the Reorganized Debtor's counsel or the Subchapter V Trustee shall not be deemed receipt by the Reorganized Debtor of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default

under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example, a default under Class 2 shall not constitute a default under Class 5(b)).

10.

Article XV.G ("Remedies Upon Default") is hereby deleted in its entirety and restated as follows:

Upon the occurrence of an uncured "default" as defined in Article XV.F of the Plan (each an "**Event of Default**"), the party who issued the Default Notice (and only that party) (the "**Defaulted Party**") shall have the right, in its sole discretion, to move to dismiss the Bankruptcy Case and/or move to convert the Bankruptcy Case to a case under Chapter 7. Unless the Bankruptcy Court rules otherwise after notice and a hearing, (i) the Holders of Allowed Claims whose Allowed Claims have not already been satisfied prior to the ruling may, if the Bankruptcy Court dismisses the Bankruptcy Case following an Event of Default, exercise (subject to applicable non-bankruptcy law) their respective collection remedies under the terms and in the amounts alleged under the original loan documents to which the Debtor is a party without further order of the Bankruptcy Court; (ii) the Holders of Allowed Claims whose Allowed Claims have not already been satisfied prior to the ruling may, if the Bankruptcy Court converts the Bankruptcy Case to a case under Chapter 7, exercise all of the rights and remedies of a creditor and party-in-interest in a Chapter 7 bankruptcy case (including, without limitation, filing a proof of claim in that case for the full amount of the Defaulted Party's alleged claim against the Debtor, including any alleged Deficiency Claim, notwithstanding the prior waiver or disallowance of such Deficiency Claim under this Plan); and (iii) the Holders of Allowed Claims whose Allowed Claims have not already been satisfied prior to the ruling may, if there is an Event of Default after the Bankruptcy Court closes the Bankruptcy Case in connection with the Debtor obtaining confirmation of a consensual Plan, and regardless of whether the Bankruptcy Court discharges the Debtor prior to the completion of all Plan payments as provided in 11 U.S.C. 1192, exercise (subject to applicable non-bankruptcy law) their respective collection remedies under the terms and in the amounts alleged under the original loan documents to which the Debtor is a party without further order of the Bankruptcy Court. Provided, however, that (i) all defenses that the Debtor and the Reorganized Debtor have on the Confirmation Date are preserved for the Reorganized Debtor and (ii) an Event of Default, cured or otherwise, shall in no way impact the Bankruptcy Court's determination in connection with the confirmation of the Plan, if any, of the extent, validity, and priority of such Holders' Allowed Secured Claims (if they have not already been satisfied) (each a "**Lien Determination**"), with each such Lien Determination surviving an Event of Default by the Debtor and surviving any order of the Bankruptcy Court dismissing or converting the Bankruptcy Case. Any suit in law or in equity to enforce the rights and remedies under the Plan may

be brought only in either the Bankruptcy Court or in any court of competent jurisdiction. Such remedies are consistent and compliant with § 1191(c)(3).

11.

As to the claims of Cadle and the SBA (claimants who participated actively in proposing the terms and conditions of this Modification): Upon the timely satisfaction of the Reorganized Debtor's payment obligations to Cadle and the SBA, respectively, as to their respective claims (each an "**Allowed Claim**") under the Plan as amended herein, the Debtor and the Reorganized Debtor, and each of their respective shareholders, officers, directors, agents, attorneys, and employees (including, without limitation, Jayesh Patel, Narendra Patel, and Chetan Patel) (collectively, the "**Released Parties**") shall be released, and shall be deemed released without the need for further order of the Bankruptcy Court, from all direct and indirect liability related to such Allowed Claim of Cadle and the SBA (if any), respectively, including, without limitation, any alleged liability in connection with any document entered into by any one or more of the Released Parties in connection with that Allowed Claim). The Reorganized Debtor's timely satisfaction of its payment obligations under the Plan to other creditors besides Cadle and the SBA shall release only the Debtor and the Reorganized Debtor from liability.

12.

The Plan Budget and Budget Assumptions attached as Exhibit B to the Plan, are replaced with the Plan Budget and Budget Assumptions attached to this Modification as Exhibit B.

Respectfully submitted, this 15th day of February, 2022.

**OMKAR HOTELS, INC.**

By: */s/ Jayesh Patel*
Jayesh Patel, its President

**STONE & BAXTER, LLP**
By:

*/s/ G. Daniel Taylor*
David L. Bury, Jr.
dbury@stoneandbaxter.com
Georgia Bar No. 133066 (*admitted pro hac*)
577 Mulberry Street – Suite 800         G. Daniel Taylor
Macon, Georgia 31201                         dtaylor@stoneandbaxter.com
(478) 750-9898; (478) 750-9899 (fax)   Florida Bar No. 115174
                                                              Counsel for Debtor

G:\CLIENTS\Omkar Hotels Inc\Plan\Modification\First Modification ((Final for Upload 2.14.22).docx